UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| A.P. a minor, by and through AMANDA G. ELLIOTT, individually and as next friend of A.P., <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, INC., <br><br> Defendant. | Case No. 13-480-MJR-PMF <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

1. COMES NOW Plaintiffs A.P., a minor, by AMANDA G. ELLIOTT, individually as parent and next friend of A.P., by and through their undersigned attorneys ("Plaintiffs"), for their Complaint against Defendant Abbott Laboratories, Inc. ("Abbott" or "Defendant") relative to its sale and distribution and manufacturing of Depakote and Depakote ER products ("Depakote") in the United States, and in support thereof would show the following:

### PARTIES AND JURISDICTION

2. Plaintiffs A.P., a minor, by AMANDA G. ELLIOTT, individually as parent and next friend of A.P., are citizens and residents Tennessee. Plaintiff A.P. was born in 2003. Her injuries were caused by her mother's ingestion of Depakote during pregnancy. Plaintiff A.P. avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiff suffered injury as a result of the mother's ingestion of Depakote.

3. The foregoing Plaintiffs allege an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

4. Hereinafter, the injured child A.P. listed above will be referred to as "Plaintiff," or "Injured Child."

5. Defendant Abbott Laboratories, Inc. now is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of Illinois, with its principal place of business and its headquarters in the State of Illinois. Abbott may be served by delivering the citation to its registered agent for service, CT Corporation System, 208 So. LaSalle St., Suite 814, Chicago, IL, 60604.

6. Abbott engaged in the business of designing, licensing, manufacturing, testing, advertising, warranting, distributing, supplying, selling, and introducing into the stream of commerce certain products known as Depakote and Depakote ER. Abbott sold and marketed its Depakote and Depakote ER products in this District and throughout the United States.

## JURISDICTION AND VENUE

7. This court has subject matter over this matter pursuant to 28 U.S.C. § 1332.

8. Defendant is a resident of the state of Illinois, there is complete diversity of citizenship between Plaintiffs and the Defendant, and the amount in controversy exceeds $75,000.00.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and 1391(d) due to Defendant's substantial contacts to this district, including direct to consumer marketing, communication with and marketing to physicians, and the sale of Depakote and other pharmaceutical products in this district.

10. This lawsuit seeks compensation, damages and other relief for injuries Plaintiff has suffered as a result of Abbott's anti-convulsant drug commonly known as "Depakote."

## COMMON FACTS

11. Abbott is and at all relevant times has been engaged in the business of formulating, designing, manufacturing, licensing, testing, advertising, marketing, warranting, selling, distributing, and introducing into the stream of commerce a drug compound known as "divalproex sodium," "valproic acid," or "valproate," which Abbott has sometimes marketed under brand names such as "Depakote," "Depakote ER," "Depakene," and "Depacon." Regardless of the name under which Abbott marketed, sold, and distributed the drug, all of its forms were and are, for all purposes relevant to Plaintiffs' claims, chemically and pharmacologically identical. For purposes of this Complaint, these various forms and names of the drug compound will all be referred to by the common brand name, "Depakote."

12. In approximately 1978, after Abbott received approval to market Depakote in the United States for treatment of certain forms of epilepsy, Abbott began marketing and placing Depakote into the stream of commerce throughout the United States. Depakote was promoted as an effective anti-epileptic drug ("AEDs").

13. Depakote as formulated, designed, manufactured, licensed, tested, advertised, marketed, warranted, sold, distributed, and introduced into the stream of commerce by Abbott was and is defective and unreasonably dangerous for its intended use. In particular, the primary compound in Depakote – valproic acid – has been established to cause severe birth defects if taken during pregnancy.

14. Among the "major congenital anomalies" (*i.e.*, birth defects) known to result directly from exposure to Depakote are, either singly or in some combination with each other, spina bifida, cleft palate, cleft lip, limb and digital deformities, facial dysmorphism, mental

developmental delays, genitourinary malformations, heart defects and other major congenital defects.

15. Medical researchers have confirmed that while Depakote is effective at controlling seizures, it is also riskier than other modern AEDs for women who are pregnant or who may become pregnant.

16. Abbott has been aware of the birth defects associated with Depakote on pregnancies on or before the date it began marketing and distributing Depakote in the United States.

17. Scientific articles single out Depakote as among the most – if not the most – teratogenic of all AEDs. One study in 1995 reported an incidence rate of neural tube defects (such as spina bifida) *ten times greater* than with other AEDs. Another study found major congenital abnormalities in eleven percent of all infants exposed to Depakote during the earliest weeks of pregnancy.

18. As pharmaceutical research and development progressed through the 1980's and 1990's, new and better AEDs were developed and approved, which proved as effective as Depakote at controlling most seizures in most epileptic patients, but which bore far less risk of causing birth defects.

19. Despite this emerging scientific consensus, Abbott refused to communicate the true nature and extent of the risk in its product labeling and warnings to physicians and consumers.

20. Instead of working to warn doctors and women of childbearing age about the sharply heightened risks of ingesting Depakote during the early weeks of pregnancy, Abbott has sought to minimize the risk and downplay the dangers in its product labeling of Depakote.

21.     Despite the risks of major congenital malformations, Abbott has aggressively pursued expansion of the uses for which Depakote is approved and marketed to doctors and patients. As early at the mid-1990's, Abbot implicitly and explicitly promoted Depakote to doctors, consumers and the general public for unapproved or "off-label" uses, such as for treatment of mild depression, the depressive state of bi-polar disorder, and chronic pain conditions such as migraine headaches.

22.     Abbott has promoted these off-label uses even though there are other common drugs which are as effective or more effective for treatment of those conditions, and which do not involve the severe risk of congenital malformations associated with Depakote. In further pursuit of market share in the pharmaceutical industry, Abbott has worked aggressively to manipulate the regulatory system and gain approval for certain of these off-label uses, in hopes of concealing within government approval the dangers of using Depakote for conditions in which its use is unnecessary.

23.     Abbott has concealed risks from and otherwise misled doctors who prescribe Depakote and monitor patients' drug regimen during pregnancy. Despite knowing the extremely high incidence rate of major congenital malformations in babies born to women who take Depakote while pregnant (one study suggested a risk of up to *one in every five pregnancies*, while others have found the risk is at least one in ten), Abbott continues to downplay the risks and refuse to provide adequate information in the Depakote label and package inserts regarding the true scope and severity of the dangers. Instead, Abbott insists on using muted and understated language to suggest that women of childbearing age weigh the "potential risks," when in fact the risks are severe, well-known to Abbott, and in scientific reality in excess of the injuries and incident rates reported in the label.

24. The most tragic aspect of the inadequate label is that Depakote causes irreversible and devastating injuries to the developing child *before the mother or the physician even have a chance to discover the pregnancy*. Abbott knew or should have known it had a duty to warn doctors and patients that women who were taking Depakote should not get pregnant, and that women who might become pregnant should not take Depakote. This simple warning, commonplace with countless pharmaceuticals, would have spared each Plaintiff a lifetime of pain and suffering, inordinate healthcare costs, severe emotional and physical distress, and loss of earning potential.

25. Depakote was and is a defective product, unreasonably dangerous in light of its nature and intended use. That defect existed when the product left Abbott's control and has been the proximate cause of injuries to Plaintiffs, whose injuries were caused by the use of Depakote in its intended or foreseeable manner or in the manner recommended by Abbott.

26. Abbott knew or should have known of the dangerous condition of its product, Depakote, but failed to adequately warn or instruct physicians and consumers of the risks, dangers, and proper uses of the drug.

27. Abbott has breached its duty of reasonable care and its express and implied warranties, and has made affirmative misrepresentations as well as misrepresentations by omission, all in connection with the design, testing, manufacture, marketing, and/or labeling of Depakote.

## DAMAGES

28. As a direct and proximate result of the acts and omissions of Defendant, Plaintiff A.P. was born with a hole in her heart, heart murmur, and other birth defects. Plaintiff A.P. continues to suffer permanent injury, pain, loss of normal life, and other non-economic damages.

29. As a direct and proximate result of the acts of and/or omissions by the Defendant, Plaintiff A.P. has suffered the following injuries and damages:

(a) bodily injury, disfigurement, conscious pain, suffering, mental anguish, mental suffering, embarrassment, shame, loss of enjoyment of life, shortened life expectancy, loss of association, loss of earnings, loss of profits, loss of salary;

(b) reasonable and necessary expenses for the medical treatment rendered to Plaintiff in the past and that will be medically probable in the future;

(c) compensation for Plaintiff's permanent mental and physical impairment;

(d) all other actual damages available under applicable law;

(e) future economic damages during the age of minority and beyond the age of 18, including lost wages of Plaintiff; and

(f) costs of this suit.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

30. Defendant failed to disclose a known defect and affirmatively misrepresented that Depakote was safe for its intended use. Further, Defendant actively concealed the true risks associated with the use of Depakote. Plaintiffs, the parents of the Injured Child, and/or the prescribing physicians had no knowledge that Defendant was engaged in the wrongdoing alleged herein. Because of Defendant's concealment of and misrepresentations regarding the true risks associated with Depakote, Plaintiffs, the parents of the Injured Child, and/or the prescribing physicians could not have reasonably discovered Defendant's wrongdoing at any time prior to the commencement of this action.

31. Thus, because Defendant fraudulently concealed the defective nature of Depakote and the risks associated with its use, the running of any statute of limitations has been tolled.

Likewise, Defendant is estopped from relying on any statute of limitations.

## COUNT I

### Strict Products Liability

32. Plaintiffs incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

33. It was the duty of Abbott to manufacture, test, market, advertise, label, distribute, and sell Depakote so that it was reasonably safe for its foreseeable use.

34. At the time Depakote left the control of Abbott and was sold, it contained one or more conditions which rendered it defective and unreasonably dangerous in light of its nature and intended use.

35. At all times, Depakote was used in the manner intended, recommended, or reasonably foreseeable by Abbott. There were and are no other reasonable, secondary causes of Plaintiffs' injuries and damages other than the use of Depakote.

36. The Depakote manufactured and/or supplied by Abbott and to which Plaintiff was exposed was defective in design, manufacture, and/or formulation in that when it left the hands of Abbott, the foreseeable risks exceeded the benefits associated with the design and/or formulation of this product.

37. The Depakote marketed, sold, and supplied by Abbott and to which Plaintiff was exposed was defective in its marketing and labeling in that Abbott knew or should have known of its dangers and risks when taken during the first trimester of pregnancy, but failed to adequately warn or instruct physicians, consumers, and the general public of the nature and extent of those risks.

38. The Depakote marketed, sold, and supplied by Abbott and to which Plaintiff was

exposed was defective in its marketing and labeling in that Abbott knew of or should have known of its dangers and risks when taken during the first trimester of pregnancy, as well as the means for reducing or eliminating those dangers and risks, but failed to adequately warn or instruct physicians, consumers, and the general public of those means of reducing or eliminating the risks.

39. The Depakote marketed, sold, and supplied by Abbott was defective in marketing in that Abbott represented to the consuming public that the product was safe and had qualities that it, in fact, did not have.

40. The Depakote manufactured and/or supplied by Abbott was defective in design and formulation in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

41. The Depakote manufactured and/or distributed by Abbott was defective in that Abbott failed to adequately test this product before placing it into the stream of commerce.

42. As a direct and proximate result of the defective condition of Depakote as manufactured by Abbott, Plaintiffs suffered injuries and damages as described, in excess of $75,000.00.

## COUNT II

### Negligence

43. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

44. Abbott had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling and/or distribution of Depakote it placed into the stream of commerce, including a duty to assure that the product did not cause unreasonable or unnecessary injury.

45. Abbott breached its duty of care to the Plaintiffs through its negligent acts and omissions. Abbott did not exercise reasonable care in the warning, design, manufacture, sale, testing, labeling and/or distribution into the stream of commerce of the Depakote in that Abbott knew or should have known that Depakote could cause serious birth defects if taken by pregnant women.

46. Abbott was negligent in the design, manufacture, sale, testing, and/or distribution of Depakote in that it: (a) failed to use due care in designing, formulating, developing, testing, and manufacturing Depakote so as to avoid or warn against the described risks to consumers who used Depakote; (b) placed an unsafe product into the stream of commerce; and (c) failed to discover or warn of the dangers associated with the use of Depakote despite having actual and/or constructive knowledge of such dangers.

47. Abbott knew or should have known that Plaintiffs could foreseeably suffer injuries as a result of Abbott's failure to exercise ordinary care as described above.

48. As a direct and proximate result of Abbott's negligence, Plaintiffs suffered injuries and damages as described, in excess of $75,000.00.

## COUNT III

### Gross Negligence

49. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

50. Each of the foregoing acts or omissions by Abbott, when viewed objectively from their standpoint at the time, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to the Plaintiffs and others.

51. Abbott acted with conscious indifference to the rights, safety or welfare of Plaintiffs and others. Their deceptive and inadequate labeling and marketing, misrepresentation of the risks of Depakote to doctors and women of child bearing potential, and refusal to engage in proper safety evaluation and investigation, both before and after Depakote was first sold, were undertaken in the callous pursuit of market advantage and without regard for the safety of those exposed to Depakote, whether directly or in utero.

52. Therefore, in addition to actual damages, Plaintiffs are entitled to recovery of exemplary damages against Abbott as a penalty or by way of punishment and to deter Abbott from similar conduct in the future.

## COUNT IV

### Breach of Implied Warranty

53. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

54. Abbott was a merchant seller with respect to Depakote.

55. In order to induce the purchase and/or use of Depakote, Abbott impliedly warranted to potential users of Depakote that Depakote was safely tested and manufactured and was safe for the uses for which it was designed and/or advertised to be used.

56. Abbott breached this warranty in that Depakote was not safe for the uses for which it was manufactured and/or advertised.

57. Plaintiffs were injured as a result of detrimental reliance upon Abbott's implied warranties.

58. As a direct and proximate result of one or more of the foregoing breaches of implied warranty, Plaintiffs suffered injuries and damages as described above in excess of

$75,000.00.

## COUNT V

### Breach of Express Warranty

59. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

60. Abbott was a merchant and seller with respect to Depakote.

61. In order to induce the purchase and/or use of Depakote, Abbott expressly warranted to potential users of Depakote that Depakote was safely tested and manufactured and was safe for the uses for which it was designed and/or advertised to be used. Express warranties were contained in direct to consumer advertising and other promotional and marketing campaigns, Depakote product information sheets given to patients with their prescriptions, and other public communications and representations.

62. Abbott breached said warranty in that Depakote was not safe to be used for the purposes for which it was manufactured and/or advertised.

63. Plaintiffs were injured as a result of detrimental reliance upon Abbott's express warranties.

64. As a direct and proximate result of one or more of the foregoing breaches of express warranty, Plaintiffs suffered injuries and damages as described above in excess of $75,000.00.

## COUNT VI

### Misrepresentation by Omission

65. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

66. Abbott misrepresented the soundness and reliability of Depakote to potential users of Depakote through promotional and marketing campaigns. Abbott misrepresented that Depakote was safe and/or effective when used as instructed, when, in fact, it was dangerous to human health. Abbott continued these misrepresentations for an extended period of time, without disclosing material information.

67. At the time Abbott promoted Depakote as safe and/or effective, Abbott did not have adequate proof upon which to base such representations and, in fact, knew or should have known that the drug was dangerous.

68. Abbott concealed these design and manufacturing defects by withholding information pertaining to the inherent design, manufacturing, and safety defects and high risks of severe birth defects as described herein, and instead presented Depakote as safe and reliable.

69. Abbott's intentional misrepresentations and omissions were made willfully, wantonly or recklessly to induce the purchase of Depakote.

70. Abbott failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe use of Depakote and otherwise failed to exercise reasonable care in transmitting information regarding its product, Depakote.

71. Abbott made the aforesaid representations in the course of Abbott's business as designers, manufacturers and distributors of Depakote despite having no reasonable basis for the assertion that these representations were true and/or without having accurate or sufficient information concerning the aforesaid representations.

72. At the time the aforesaid representations were made, Abbott intended to induce reliance upon such representations.

73. Said representations were made with the intent to defraud and deceive and with intent to induce reliance upon the statements in order to reap the profits from the sale of Depakote.

74. At the time the representations were made, there was no reason to know of their falsity. As a result of reasonable reliance upon Abbott's representations that Depakote was safe, Plaintiffs have suffered, and will continue to suffer, injury, harm and economic loss alleged herein.

75. As a direct and proximate result of one or more of the foregoing misrepresentations, Plaintiffs suffered injuries and damages as described above in excess of $75,000.00.

## CAUSE VII

### Fraud and Misrepresentation

76. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

77. Abbott knew or should have known that the information disseminated about the safety of Depakote usage was false and/or misleading. Abbott had an absolute duty to disclose the true facts regarding the safety of Depakote, which it negligently failed to do. Furthermore, Abbott had a duty to ensure that it had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations concerning Depakote, all of which Abbott failed to do.

78. Important information regarding the risk of Depakote was in the exclusive control of Abbott and was exclusively known by Abbott. As part of its business and in the furtherance of

Abbott's own interests, Abbott disseminated information regarding Depakote to the public and did so knowing that the safety of Depakote users depended on the accuracy of that information. Further, Abbott knew and expected that its representations regarding Depakote would cause others to take action based upon the information and would cause individuals to be put in peril by such actions and that those individuals would suffer physical harm as a result.

79. Abbott expressly and/or impliedly warranted that Depakote was safe for use. The representations by Abbott were, in fact, false. The true facts were that Depakote was not safe for use and was, in fact, dangerous to the health of Plaintiff.

80. Abbott failed to exercise reasonable care both in ascertaining the accuracy of the information contained in those representations and in communicating the information. Further, Abbott was aware that without such information it could not accurately make the above described representations.

81. As a direct and proximate result of one or more of the foregoing misrepresentations or omissions, Plaintiffs suffered injuries and damages as described above in excess of $75,000.00.

## COUNT VIII

### Intentional Infliction of Emotional Distress

82. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

83. Abbott's intentional, reckless and extreme conduct foreclosed any opportunity to adequately measure the level of risk related to Abbott's Depakote product. By withholding information of known design and manufacturing defects and concealing those fatal problems, Abbott created a false sense of security regarding the safety of Abbott's Depakote product.

84. Abbott's conduct of intentional omission, concealment and failure to warn of the design and manufacturing defects caused Plaintiffs to suffer injuries, harm and economic loss as alleged herein, including permanent and substantial injuries, and expenses attributable to Abbott's conduct.

85. The injuries described above entitle Plaintiffs to compensatory damages in excess of $75,000.00 and equitable and declaratory relief, along with all appropriate other damages according to proof.

## CAUSE IX

### Negligent Infliction of Emotional Distress

86. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

87. Abbott intentionally and willfully failed to disclose or warn of the inherent risks and defects of Depakote, while knowingly concealing design, manufacturing and safety defects, and misrepresenting the risks of severe side effects, quality, safety and efficacy of the drug.

88. Abbott's willful conduct inflicted Plaintiffs with severe emotional distress.

89. Abbott's conduct of willful omission and concealment of design, manufacturing and safety defects in order to induce ingestion of the drug caused Plaintiffs severe emotional distress.

90. As a direct result of Abbott's careless and negligent conduct, Plaintiffs have suffered and will continue to suffer injury, harm and economic loss as alleged herein, including permanent and substantial injuries, and expenses attributable to their injuries.

91.     The injuries described above entitle Plaintiffs to compensatory damages in excess of $75,000.00 and equitable and declaratory relief, along with all other appropriate damages according to proof.

WHEREFORE, Plaintiffs ask that Defendant Abbott Laboratories, Inc. be cited to appear and answer herein. That upon final trial, Plaintiffs have judgment against Defendant Abbott Laboratories, Inc. in excess of this Court's jurisdictional requisite for actual damages, costs of court, and any other relief that will fairly and adequately compensate for the losses herein alleged.

                                      Respectfully submitted,

By:    /s/ Douglas P. Dowd
        Douglas P. Dowd (MO29240)
        William T. Dowd (6203008)
        Dowd & Dowd, P.C.
        211 North Broadway, Ste. 4050
        St. Louis, MO 63102
        (314) 621-2500
        (314) 621-2503 facsimile
        doug@dowdlaw.net
        bill@dowdlaw.net

        John J. Driscoll (6276464)
        Chris Quinn (MO41883)
        The Driscoll Firm, P.C.
        211 N. Broadway, Ste. 4050
        St. Louis, Missouri 63102
        314-932-3232 telephone
        314-932-3233 facsimile
        john@thedriscollfirm.com

*Attorneys for Plaintiffs*